

I certify this to be a true and accurate copy of a fax from Bridget O'Rourke to Kay Sieverding dated October 6, 1999.

_____     2/11/15
Julie Franklin, CMC                Date
City Clerk, City of Steamboat Springs



137 10th Street, P.O. Box 775088, Steamboat Springs, Colorado 80477-5088
(970) 879-2060 • Fax (970) 879-8851 • www.steamboatsprings.net

Printed on 30% Post Consumer Fiber

ne 11-23-15

# BRIDGET K. O'ROURKE, ESQ.
P.O. Box 883227
Steamboat Springs, CO 80488
(970) 871-9066 phone & fax

## FAX COVER SHEET

TO: Kay

FAX: (___) 879-5206       PHONE: (___) 9-7085

DATE: 10/06/99            No. of pages w/ cover ____

RE:   Mediated agreements

Kay,

I am faxing this as I couldn't reach you by phone. Bennett's have now left town. I was able to get them to sign the agreements with these horse terms in it. This was as far as they would go. Please consider whether these provisions are minimally adequate for you to sign off on this agreement today. If not, I understand. I am coming over now to pick up their signed copies and will stop in to see you with a full set of the whole agreements including a stipulated settlement for the citation.

Yours truly,

*[signature]*

Bridget O'Rourke

*[Handwritten margin note: original fax has page #s 1-15 | time orig fax + Bridget O'Rourke on every page]*

# MEDIATED AGREEMENT

This agreement is made between Kevin Bennett, Jane Bennett, Kay Sieverding, David Sieverding ("the parties") in full settlement of their conflicts regarding:
a) use of public right of ways on Princeton Avenue, b) guest parking; c) the Sieverding's perception of the public's ability to turn around at the end of Princeton Avenue; and d) other disparate individual concerns expressed by the parties regarding privacy and safety matters.

The parties hereby agree to the following terms and conditions. By signing, each party agrees to release any claim they may have arising out of this conflict against any party to this agreement and bind themselves to honor the commitments made herein. This agreement and an additional agreement between the parties and the City of Steamboat Springs has been voluntarily reached to resolve the underlying disputes without requiring judicial action. The parties acknowledge that the mediator has encouraged them to have their own legal representation in this process and they have done so to the extent they desired such assistance.

**1. Proposal to vacate and divide right of way**
The parties agree to request that the City vacate its right of way at the end of Princeton Avenue. The parties understand that only the Steamboat Springs City Council has the authority to decide whether or not to approve this request. If approved, the parties promise to immediately effectuate a conveyance of real property from the Sieverdings to the Bennetts to implement a division of the vacated area according to the boundary line they agreed to "on the ground". A specific legal description of the proposed division will be written. However, for purposes of this agreement the proposed new boundary line between the properties may be generally described as follows:

> Beginning at the NE corner of the end of the existing pavement on Princeton Avenue and proceeding on an angle of approximately 30° diagonally and northeastward towards the three blue spruce trees. At a distance of twelve (12) feet in from the end of the pavement (measured by extending a line parallel to the street) the proposed boundary line turns at a 90° angle northward and perpendicular to the street and continues for four (4) feet, thence it turns again at a 90° angle eastward and runs parallel to the street for 23 feet. Then, the boundary line runs diagonally to the electric pole bisecting the space between the middle and eastern most spruce trees and falling approximately 13 inches from each tree trunk. This division of the property will result in two spruce trees being located on the Sieverding's side of the boundary line (i.e. the western most and middle of the three spruce trees) and the last or eastern most spruce tree will be on the Bennett's side of the new boundary.

The parties promise to take what ever steps are necessary to obtain approval of their request for vacation of the right of way and to immediately implement their agreed upon division of this

vacated area, including any real estate conveyances required to effectuate their agreement on these matters.

At a minimum, the parties believe the following steps are necessary to effectuate this agreement:

**Step 1** The parties will reach agreement "on the ground" on a new boundary to divide the proposed vacated area and other issues such as parking and turn around areas. The mediator will put this agreement into writing for the parties to sign by or before Step 3 is implemented.

**Step 2** The proposed new lot boundary lines agreed upon under Step 1 will be surveyed and new legal descriptions will be written for use in all the appropriate deeds or other conveyance documents necessary to implement the parties proposed division of this area. The parties will be responsible to determine the steps and timing necessary for any re-plat of their properties as a result of the approval of the request to vacate and the immediate real property conveyances necessary to implement their agreed upon division of the proposed vacated area.

**Step 3** The Bennetts and the Sieverdings will sign the necessary deeds, or other conveyance documents and provide these to attorney John Melvin, Esq. with specific instructions for the signed deeds to be held in escrow and recorded immediately upon approval of the request to vacate. The closing instructions shall specify that no additional signatures or conveyances will be needed to complete the transfer of property between the parties.

**Step 4** Jane Bennett, acting as the parties' representative, will be responsible for handling the legal process to request the vacation of the City's right of way. Her responsibilities will include:
a) filing a request to vacate with the City Planning Dept.;
b) other steps required by state statute or City ordinance;
c) presenting the request to vacate in ordinance form to City Council for its first reading;
d) being present to answer questions or otherwise address the ordinance at its second reading by City Council.

If the ordinance is passed by City Council on second reading, then

e) the parties will provide Mr. Melvin with copies of the approved ordinance. Mr. Melvin will record all the parties' documents including the proof that the right of way has been vacated with the Routt County Clerk and Recorder. The documents to be recorded may include the ordinance, deeds, conveyance documents, plat, or survey as well as a quit claim deed or other conveyance document between the parties evidencing their agreed upon division of the vacated area.

**2. Presenting Request to City Council regarding Proposal to Vacate Right of Way**
Jane Bennett will be responsible for presenting the request to vacate the right of way to the City Council and any and all other steps necessary to seek approval of the request through appropriate processes. Jane Bennett will exercise her best judgment and diplomacy skills in presenting the parties' request to vacate the right of way. Jane Bennett will provide a written status report as information becomes available on the progress of the request to vacate. Mrs. Bennett will provide a copy of the report for the City Clerk Julie Struble to fax to Mrs. Sieverding.

## MEDIATED AGREEMENT

This agreement is made between Kevin Bennett, Jane Bennett, Kay Sieverding, David Sieverding ("the parties") and the City of Steamboat Springs ("City") in full settlement of their conflict.

The parties hereby agree to the following terms and conditions. By signing, the parties agrees to release any claim they may have arising out of this conflict against the City and they bind themselves to honor the commitments made herein. This agreement has been voluntarily reached to resolve the underlying disputes without requiring judicial action. The parties understand that this document may be subject to public disclosure. The parties acknowledge that the mediator has encouraged them to have their own legal representation in this process and they have done so to the extent they desired such assistance.

At the end of the paved roadway on Princeton Avenue is a city owned right of way measuring approximately 50 feet by 60 feet. This right of way adjoins property owned by the Bennetts and the Sieverdings. In this area, the right of way is not divided equally from the middle of the roadway. Rather, the greater portion of the right of way is on the north side of the street.

1. The Sieverdings and the Bennetts will submit a request to the City Council that the City of Steamboat Springs vacate the right of way at the end of Princeton Avenue.

2. If the parties' request is approved by the City Council, any building subsequently constructed on that portion of the vacated area to be acquired by the Bennetts will be set back at least 22 feet from the end of the current pavement on Princeton Avenue. The Bennetts agree to make reasonable efforts not to park in the 22 foot set back area in such a way that any vehicles extend into the roadway. The Bennetts will permit the City snow plow to back into this set back area in their driveway for purposes of plowing Princeton Avenue. The Bennetts will make reasonable efforts to accommodate the City's snow plow.

3. The City agrees to address Mrs. Sieverding's concern about the need to avoid piling snow plowed out of Princeton Avenue in such a way that it adversely impacts visibility at the intersection of Princeton and Pahwinta.

4. The City will reposition the current NO THROUGH STREET sign to increase its visibility for cars turning right onto Princeton Avenue from Pahwinta. The sign will not be placed where it will block a driver's visibility of the STOP SIGN. The parties understand that the City cannot guarantee that these signs will remain in the placement noted herein in perpetuity. The City reserves the right to reposition any signs in the City as future circumstances may warrant.

The parties acknowledge that in drafting this document the mediator acted solely as their scrivener. They acknowledge hereby that they have read this document carefully and find that it accurately reflects their agreements.

_Kay Sieverding_ 10/6/99           _Kevin Bennett_ OCT 6, 99
Kay Sieverding    date              Kevin Bennett   date

_David Sieverding_ 10/6/99          _Jane Bennett_ 10/6/99
David Sieverding  date              Jane Bennett    date

City of Steamboat Springs
by: _Paul W. Hughes_ 10·6·99
    Paul Hughes, City Manager  date

The following terms are conditioned upon the approval by the City Council of the parties' request to vacate the right of way at the end of Princeton Avenue.

### 3. Parking
The parties agree to provide off street parking space for their household members. In addition, they will each provide off street parking for at least two guest vehicles. The Sieverding's guest parking area is already in place.

Barring natural disaster or other unforeseen circumstances beyond the control of the parties, by October 1, 2000, the Bennetts will complete the construction of a guest parking area off of their secondary driveway on Princeton. This off street parking area will be located completely off the City right of way. The entrance to the parking area will be at least 20 feet wide. It will be paved 15 feet back from the edge of Princeton Avenue, and beyond that it will either be gravel, paved or both. At the lot line, the elevation will be raised 3 inches from its current level. The lower branches of the tree by the driveway will be trimmed to maintain visibility.

*[handwritten margin note: now WANT NEW Buildin lot in sam area]*

As assurance that the parking area will be completed as promised, the Bennetts agree to donate $200 per month to Soda Creek Elementary School as a penalty if the parking area is not substantially completed by October 1, 2000. If applicable, the first penalty payment will be due on November 1, 2000 and the penalty payments, up to a maximum of $2500, shall continue on the first of each month until the parking area is substantially completed.

The parties will encourage any visitors to their residence to use their respective secondary driveways for turning around. The parties will make every effort to minimize their family's or their guest's usage of their neighbor's drive for turning around.

### 4. Respect and Non-Interference
The parties will respect each other's rights to privacy and the quiet use and enjoyment of their property.

Each party is free to participate in the life of the community free of interference by any party to this agreement.

### 5. Promise not to publish or distribute personally identifiable critical materials
Until September 30, 2001 Kay Sieverding agrees to refrain from publishing or distributing any written materials that specifically identify Mr. Bennett by name and criticize him personally for alleged public or private activities.

### 6. Fees and Costs
Unless otherwise agreed herein, each party will pay their own legal fees including the fee for a re-plat of their property if required by the city upon approval of the request to vacate.

The Bennetts will pay the cost of all surveying necessary to prepare a 50 – 50 line division as well as the legal descriptions needed on both lots to effectuate the parties' proposed division of the right of way and any other documents needed to support the request to vacate the right of way. Such documents will include a quit claim deed from the Sieverdings to the Bennetts for a

*[signatures: JB, KB, KS]*

section of the vacated right away and instructions for the title company regarding the escrow of the deeds and closing of the real estate transaction.

The Bennetts will pay the costs associated with drawing up the quit claim deed or other real estate conveyance documents needed between the Sieverdings and the Bennetts to divide the right of way in accordance with the parties agreement "on the ground".

### 7. Privacy Buffers

The Bennetts agree not to build within 25 ft. to the east of the Sieverding's boundary line as presently defined by the chain length fence.

If the parties' request for vacation of the City right of way is approved, any building constructed on the property acquired by the Bennetts will be set back at least 22 feet from the end of the pavement on Princeton Avenue. If any building is constructed on the vacated right of way acquired by Bennetts, they will install at least one light sensitive lighting fixture, with a 75 watt bulb, on the exterior side of the building facing Princeton Avenue that is visible from the street.

The Bennetts will make reasonable efforts not to park in the set back area in such a way that a vehicle extends into the roadway. In addition, they will permit the City snow plow to back into their driveway for purposes of plowing Princeton Ave. The Bennetts will make reasonable efforts to accommodate the City's snow plow.

The Sieverdings will grant the Bennetts a 5 foot variance (reduction) in any set back from their southern boundary line required for construction of the Bennett's garage on the vacated right of way so long as a set back of at least 10 feet remains between the Sieverding's southern property boundary and the building.

### 8. Fences and Spruce Trees:

Each party is responsible for construction of any fencing on their property. The parties will not erect any fencing with spikes.

When the Bennetts construct a fence, it will be placed so that the all three spruce trees are located on the Sieverding's side of the fence. The fence will be placed on the newly proposed property line from the end of the pavement on Princeton Avenue until it reaches a point just after the middle spruce tree. Then, the fence will be placed 2 feet south and back from the property line such that all the spruce trees will be located on the Sieverding's side of the fence. The Bennett's current wooden fence between the properties will be taken removed as soon as possible and no later than July 1, 2000.

The parties would like the spruce trees to remain uncut, except that Mrs. Sieverding believes that it would be desirable to trim the current bottom branches of all three spruce trees because they are currently dying from lack of sunlight. The parties agree agree to allow Mrs. Sieverding to trim the lower branches of the Bennett's spruce tree up to a height of 6 ½ feet and no further. Each party has the right to trim the trees located on their property. The Bennetts will also have the right to trim any branches from the Seiverding's spruce trees which hang over the fence line onto their side, so long as the trimming does not adversely impact the health of the trees. While

cutting the spruce trees is not anticipated or considered likely at this time, the parties reserve their rights as property owners in this regard should circumstances change.

The Bennetts promise not to pave within three feet of the outer edge of the trunk of any of the spruce trees.

The Bennetts will remove the barb wire between the eastern edge of Seiverding's property and the northeastern edge of their conservation area. The Bennetts will refrain from installing any new barb wire fencing in the vacated area or along their fence line with Sieverdings.

If the request to vacate is approved, the willow trees on the current right of way may be cut down.

### 9. Access for Utility Providers

Parties agree to allow access on their property for their own or their neighbor's utility service providers, including but not limited to US West Communications and Yampa Valley Electric Association.

Mrs. Sieverding will make arrangements to have a protective post installed in front of the Sieverding's telephone box located on the property line between the Bennetts and the Serafis. The Bennett agree to reimburse Mrs. Sieverding for her expenses associated with installation of the protective post up to $100.

### 10. Encouraging compliance by successors

Both the Bennetts and the Sieverdings promise that if they sell their property, they will inform the new purchasers of the promises they made under this agreement. They will encourage any new purchaser to comply with the agreement by explaining why it would be in the best interest of all concerned to abide by the commitments made herein.

11. The Sieverdings agree not to object to the Bennetts keeping horses in the meadow and /or lower field adjacent to the Serafi's property with the following conditions:

a. The horse pasture and horses will be kept 25 feet away from the Sieverding's eastern boundary as defined by the chain link fence.
b. The Bennett's will keep their horses off of the Sieverding's property including the easement area along their lot on Princeton Avenue.
c. If the Bennett's horses directly cause any damage to the Sieverding's landscaping, the Bennett's will assume responsibility for that damage.
d. The Bennett's will reserve their guest parking area for guests and will not use that area for long term storage of any horse trailers if it would result in a complete lack of any guest parking.



MUNICIPAL COURT, CITY OF STEAMBOAT SPRINGS,
ROUTT COUNTY, COLORADO

Case No. 24280

---

STIPULATION AND ORDER FOR DEFERRED PROSECUTION

---

THE PEOPLE OF THE STATE OF COLORADO,
BY AND THROUGH THE PEOPLE OF
THE CITY OF STEAMBOAT SPRINGS,                          Plaintiff,

vs.

Kay Anderson Sieverding,                                 Defendant.

---

COME NOW, the City of Steamboat Springs, Colorado, by and through its undersigned Assistant City Attorney, and Kay Anderson Sieverding, Defendant in the above matter, and stipulate and agree as follows:

1.  Defendant acknowledges and consents to the jurisdiction of the Court in this Case.

2.  Defendant is advised that she has a right to:

    a.  a trial before the Judge or a jury;
    b.  cross-examine witnesses testifying against her;
    c.  call witnesses on her own behalf;
    d.  remain silent and refuse to testify against herself;
    e.  a speedy trial under the Colorado and the U.S. Constitutions;
    f.  dismissal of the charge against her if it is not tried within ninety (90) days of her plea of not guilty under the terms and conditions set forth in Rule 248 of the Municipal Court Rules of Procedure for the State of Colorado; and
    g.  appeal any conviction.

3.  Defendant is advised that she has a right to obtain an attorney to advise her with regard to the charges, procedures and defense of this action and that, if she is financially unable to employ an attorney, one will be appointed to represent her at no cost to her, if there is a possibility that she will incur a jail sentence.

4.  Defendant is charged with the offense of trimming permit required, in violation of Section 24-5 of the Steamboat Springs Revised Municipal Code, the

1

maximum penalty for which is a fine up to $999.00 or six (6) months in jail, or a combination of both.

    5.    Defendant agrees to the following terms and conditions:

        a.    Defendant waives her right to a speedy trial in this matter.

        b.    Assistant City Attorney requests the Court to defer prosecution in this case for a period of two (2) years from the date of the Court's approval hereof.

        c.    Defendant shall not violate, during the deferral period, for which she is found or pleads guilty to, any section of Chapter 24 of the Steamboat Springs Revised Municipal Code, a copy of which is attached hereto as Exhibit "A" and by this reference incorporated herein. Provided, however, that Defendant shall be permitted to maintain, by spraying, mulching, fertilizing and/or otherwise treating, removing, destroying, breaking, cutting or trimming any living plant or any part thereof growing within the City of Steamboat Springs right-of-way installed pursuant to that certain letter of permission under date of May 8, 1999 from Paul W. Hughes, City Manager, City of Steamboat Springs, to Kay Sieverding, as more fully set forth therein (Exhibit "B", attached hereto and by this reference incorporated herein.)

        d.    Upon full compliance with the terms and conditions of this stipulation, the Assistant City Attorney will consent to the entry by the Court of an Order dismissing this action with prejudice.

        e.    In the event that Defendant violates one or more of the terms and conditions of this stipulation as described in c. above, then the Court shall forthwith set the above matter for a trial to the Court and provide notice of same to the Defendant as provided by law.

    6.    If the Court refuses to accept this Stipulation, Defendant may rely on a not guilty plea and exercise all the rights listed in No. 2 above.

_Kay Sieverding_
Defendant

N/A
Attorney for Defendant

CITY OF STEAMBOAT SPRINGS

_Colette Byrne-Erickson_
COLETTE BYRNE-ERICKSON, #23043
Assistant City Attorney
P. O. Box 775088

2

## ORDER

THE ABOVE stipulation is hereby approved and the terms and conditions thereof are hereby made an Order of this Court.

DATED this _____ day of _____, 1999.

BY THE COURT:

_____
MUNICIPAL COURT JUDGE

4

EXHIBIT "A" TO STIPULATION AND ORDER FOR DEFERRED PROSECUTION

## Chapter 24

### TREES AND SHRUBS

**Sec. 24-1. Legislative intent.**

The purpose of this chapter is to protect the public health, safety, and welfare by prescribing requirements for the protection of plants, including without limitation trees, shrubs, lawns, and all other landscaping located, standing, or growing within or upon city property, including without limitation any city-owned street, alley, right-of-way, or other public place or city or mountain park, recreation area, or open space. All such plants belong to the city.

**Sec. 24-2. Supervision by city manager.**

The city manager shall supervise reforestation; regulate the preservation, culture, and planting of plants on city property; prune, spray, cultivate and otherwise maintain such plants; trim or direct the time and method of trimming such plants; and take such measures as the manager deems necessary to prevent, control, and exterminate weeds, insects, and other pests and plant diseases.

**Sec. 24-3. Planting in public areas.**

(a) No person shall plant in or remove from any city property any plant without first obtaining written permission from the city manager to do so.

(b) A property owner may plant trees along the streets of the city, fronting on such person's property, between the edge of the roadway and that person's property line if the person plants the trees of the species, in the places, and in the manner designated by the city manager.

**Sec. 24-4. Inspection and removal of dead or dangerous trees.**

(a) The city manager may enter upon any premises without a warrant to inspect all trees and shrubs in the city.

(b) If the city manager finds that there exist on any private property in the city dead trees or overhanging limbs that pose a danger to persons or property, the manager shall notify the owner, lessee, agent, occupant, or other person in possession or control of the property upon which the condition exists of the duty to remedy the condition within fifteen (15) days from the date of the notice or such shorter time as the manager finds appropriate in view of the nature and extent of the condition.

(c) If the city manager determines that any tree or shrub growing on private property within the city is afflicted with any dangerous or infectious insect infestation or disease, the manager shall notify the owner, lessee, agent, occupant, or other person in possession and control of the property of the condition and order such person to take specific prescribed measures that the manager determines are reasonably necessary to cure the infestation or disease and to prevent its spread within fifteen (15) days from the date of the notice or such

§ 24-4    STEAMBOAT SPRINGS REVISED MUNICIPAL CODE

shorter time as the manager finds appropriate in view of the nature and extent of the condition.

(d) If the person notified pursuant to subsection (b) or (c) of this section fails to correct the condition as required by the notice prescribed in such subsection, the city manager may correct the condition and charge the costs of such correction, plus an additional amount of fifty dollars ($50.00) for administrative costs, to the owner and to the lessee, agent, occupant, or other person in possession and control of the property. If any property owner fails or refuses to pay when due any charge imposed under this section, the city manager may certify due and unpaid charges, including interest, to the county treasurer for collection in the same manner as other taxes are certified for collection.

(e) Notice under this section is sufficient if it is deposited in the mail, first class postage prepaid, addressed to owner of the property at the address shown on the records of the county assessor or to the last known address of the lessee, agent, occupant, or other person in possession or control of the property.

(f) Nothing in this section shall be deemed to prohibit the city manager from taking such steps to correct an immediate threat to the public health, safety, or welfare that the manager determines is posed by such diseased, dead, or dangerous plants.

(g) The city manager may prune, spray, destroy, or remove any diseased or infested tree or shrub on private property upon the request of the property owner or a lessee, agent, occupant, or other person in possession or control of the property if such person agrees in writing to pay for the costs of such service.

Sec. 24-5. Spraying and trimming permit required.

(a) No person except the city manager shall spray, mulch, fertilize, or otherwise treat, remove, destroy, break, cut, or trim any living plant or any part thereof growing on city property without first having obtained a written permit from the manager.

(b) No person authorized by the city manager to cut or trim a plant on city property shall do so except in the manner prescribed by the manager.

The parties acknowledge that in drafting this document the mediator acted solely as their scrivener. They acknowledge hereby that they have read this document carefully and find that it accurately reflects their agreements.

_Kay Sieverding_ 10/5/99
Kay Sieverding       date

_David Sieverding_ 10/6/99
David Sieverding     date

_Kevin Bennett_ Oct 6 1999
Kevin Bennett        date

_Jane Bennett_ 10/6/99
Jane Bennett         date