00C180 - August 31, 2000

Exhibit H

DISTRICT COURT, ROUTT COUNTY, COLORADO

CASE NUMBER 00C180

REPORTER'S TRANSCRIPT

JANE BENNETT,

Plaintiff,

vs.

KAY SIEVERDING,

Defendant.

Hearing in this matter was commenced on Thursday, August 31, 2000, 11:39 a.m., at Steamboat Springs, Colorado, before the HONORABLE Joel S. Thompson, Judge of the District Court.

FOR THE PLAINTIFF: Pro se.

The Defendant was not present in person.

ORIGINAL 

E 216

```
                                                              13
 1
 2
 3
 4                    REPORTER'S CERTIFICATE
 5    STATE OF COLORADO)
                       :  ss
 6    COUNTY OF ROUTT  )
 7
 8        I hereby certify that the foregoing transcript
 9    consisting of Pages 1 through 12 constitutes and comprises a
10    full and accurate transcript of my stenograph notes taken of
11    the matter described on the first page hereof.
12        DATED this 15th day of September, 2000, at Craig,
13    Colorado.
14
15                              _____
                                Margaret L. Sellers,
16                              Certified Shorthand Reporter
17
18
19
20
21
22
23
24
25
```

ORIGINAL  

2

1    THE COURT: I'll call Case Number 00C180. This is
2  Jane Bennett versus Kay Sieverding. Mrs. Bennett has filed
3  a Verified Complaint for a Restraining Order, and I'm
4  conducting an ex parte hearing on that request.
5    Mrs. Bennett, could I get you to raise your right hand.
6    JANE BENNETT,
7  having been first duly sworn to state the whole truth,
8  testified as follows:
9    THE COURT: There was some event that occurred a couple
10 of days ago between you and Ms. Sieverding. Can you
11 describe for me, please. You indicated that it was between
12 3:30 and 4:30 in the afternoon?
13   PLAINTIFF JANE BENNETT: Yes. I was driving home from
14 getting vegetables at Sweet Pea Market, and I was coming
15 along Merritt Street, and I looked in my rear view mirror
16 because I heard some honking, and it was Kay Sieverding and
17 her son and they came up close behind me, and they were
18 aggressively honking at me, and I stopped at Merritt and
19 Pawintah, and so I went across Pawintah and hurried down
20 into my driveway to get somewhere safe, and I was in my car
21 and I looked over my left shoulder and she came running
22 toward me very aggressively, and I got out of the car and
23 she started jumping up and down and screaming at me and
24 saying that just because I was the wife of the City Council
25 President didn't mean that I could obey--disobey the law and



E218

1   the Constitution, and she was screaming, asshole, and she
2   stayed on the street and didn't come over to my--onto my
3   driveway, but I was very, very frightened, and her son was
4   with her but he didn't say anything, and then she left.
5       She was throwing her arms around and screaming louder
6   than I've ever heard anyone scream, and then I was very
7   shaken and went in my house, and there were three witnesses,
8   and then I called the police.
9       THE COURT:  It's kind of bizarre, frankly, this
10  Restraining Order Statute.  It requires that in order for
11  you--I mean, one of the bases for getting the Restraining
12  Order is for you to prove that the crime of harassment has
13  been committed, but invariably you go to the Police
14  Department and report this and they tell you, we're not
15  going out to arrest anybody; you need to go get yourself a
16  Restraining Order, and it really requires that you prove
17  that the offense was committed in order for the Restraining
18  Order to issue, which I never understand why the police
19  don't feel like they should intervene.  They're just taking
20  a hands-off policy, and they received a report, and they're
21  not taking any further action?
22      PLAINTIFF JANE BENNETT:  They came to my house and I
23  wrote up a report and gave it to Officer Stucker.  He took
24  reports from two witnesses, and then I went to the police
25  station yesterday and talked to them about it.


E 219

4

```
 1        THE COURT:  Are they going to pursue criminal charges?
 2        PLAINTIFF JANE BENNETT:  Yes.
 3        THE COURT:  All right.  As I understand what--well--
 4        PLAINTIFF JANE BENNETT:  In fact--
 5        THE COURT:  --there have been other incidents that have
 6   occurred as well?
 7        PLAINTIFF JANE BENNETT:  Yes.
 8        THE COURT:  Can you tell me how many and just give me
 9   some general description of what happens.
10        PLAINTIFF JANE BENNETT:  They've been very numerous
11   over the last eight years, and it's escalated lately.  She
12   comes over into my yard and screams at my workers to stop
13   construction on building that we're doing that she says
14   we're--that they have to stop right now.  She's going to
15   have our buildings torn down; that we are disobeying the
16   Constitution and the law.  She stopped some of the people
17   that are going to work on it and made them leave.  They left
18   they were so scared of her, and she screams at me when I
19   drive down the street and she screams at me when I'm in my
20   yard.
21        THE COURT:  And when she screams at you, what is she
22   saying, or what language is she using?
23        PLAINTIFF JANE BENNETT:  You know, one time she
24   screamed at me and said, thanks for getting me arrested;
25   thanks a lot for getting me arrested.  I'm on my property
```

*[Handwritten annotation in left margin near lines 12-18:]* Not what workers said

*[Handwritten annotation at bottom:]* For trimming the tree hanging over drive

*[Handwritten at bottom right:]* E220

Case 2:05-cv-02510-JWL-KGS   Document 18-8   Filed 02/21/06   Page 6 of 11
Case 1:24-cv-00246-JL-AJ   Document 1-2   Filed 08/12/24   Page 6 of 11

5

1   or--she just is very--very loud and very threatening.
2       I had a yard sale where I invited people through the
3   paper to come into my yard and buy goods from me, and she
4   stood and waited as each person got out of their car and
5   handed them a flyer that I had had her arrested for
6   gardening, and now it was very disruptive. It was very
7   disruptive to my yard sale. I'm sure people thought she was
8   me scaring people. It goes on all the time. She writes
9   letters about me and my family constantly; e-mails.
10      THE COURT: There has been no offensive touching?
11      PLAINTIFF JANE BENNETT: No.
12      THE COURT: She hasn't shoved, or pushed, or kicked, or
13  anything like that?
14      PLAINTIFF JANE BENNETT: Not me; no.
15      THE COURT: And this contact that you have with her
16  generally occurs right there where your houses are located?
17  She's not following you around town, or anything like that?
18      PLAINTIFF JANE BENNETT: Uh, I don't believe so. She
19  started following me on the 29th. She was following me and
20  followed me home and waited till I got out of the car and
21  started screaming at me.
22      THE COURT: These communications that she has with you,
23  can you describe when those occur? Are those during the
24  day? Are they late at night?
25      PLAINTIFF JANE BENNETT: During the day usually. I try

E221

6

1   very hard not to antagonize her, not to engage her.  I have
2   never done anything to this woman but bring her candy when
3   she moved into the neighborhood.
4       THE COURT:  So the communications, then, unpleasant as
5   they are, they're only occurring during the daylight hours.
6   She's not calling you late at night?
7       PLAINTIFF JANE BENNETT:  She may have called me in the
8   night years past.  I can't remember the date.  She called
9   one time; have our fence torn down; cut our trees down, but
10  that was like a couple of years ago.  It's been going on for
11  many years.
12      THE COURT:  And you said this last occasion she called
13  you an asshole?       No
14      PLAINTIFF JANE BENNETT:  Uh-huh.
15      THE COURT:  Any other offensive language used in any
16  other contact or communication with her?
17      PLAINTIFF JANE BENNETT:  It's just very offensive to me
18  that she yells that I'm breaking the law when I try--where I
19  don't break the law and it is very offensive to be called
20  that because I'm very against abusive power, breaking the
21  law, not obeying the Constitution.  These are things
22  that--so when she comes and writes these things and passes
23  them around town, it's really hard on me.
24      THE COURT:  This last incident you said she stood in
25  the street when she was yelling at you?

§ E222

25 ~~30 feet~~

7

1    PLAINTIFF JANE BENNETT:  She was in the street, which
2  she was 6 feet from me.  She always does that.  She's very
3  careful about that, although recently, she's come onto my
4  property and screamed at my workers on my property, and
5  they're all scared.  No
6    THE COURT:  And have you been--were you present when
7  those occurred, or they just related it?
8    PLAINTIFF JANE BENNETT:  I've been in the house and
9  they told me about them, and one fellow on his police report
10 on the 29th, said it was at least the fifth time that she
11 had come and screamed at us.
12    THE COURT:  When you said she was following you closely
13 down Merritt Street, how closely would you estimate she was
14 following you?
15    PLAINTIFF JANE BENNETT:  When I looked in my rear view
16 mirror, she was just right there.  They were just right
17 behind me.
18    THE COURT:  Were you concerned you were going to be
19 hit?
20    PLAINTIFF JANE BENNETT:  Yes.
21    THE COURT:  Or something like that?
22    PLAINTIFF JANE BENNETT:  I was concerned she was going
23 to do something because she was honking constantly at me.
24    THE COURT:  Are you concerned for your personal
25 safety--

E 223

8

1      PLAINTIFF JANE BENNETT:  Yes.

2      THE COURT:  --now?

3      PLAINTIFF JANE BENNETT:  I'm always concerned for my
4   personal safety whenever she's around.

5      THE COURT:  And it's because of this behavior?

6      PLAINTIFF JANE BENNETT:  Yes.

7      THE COURT:  You deem to be threatening?

8      PLAINTIFF JANE BENNETT:  Yes.

9      THE COURT:  How far away are your respective homes?

10     PLAINTIFF JANE BENNETT:  They're quite close.  Our
11  property adjoins each other, so I'm not very good at--you
12  know, feet and yards and stuff, so--we're quite close.  Our
13  property lines adjoin each other.

14     THE COURT:  Well, how about the houses that you're in,
15  that you live in?  How far away are those?

16     PLAINTIFF JANE BENNETT:  I'm not sure.  Can I ask my
17  husband?

18     THE COURT:  Sure.

19     MR. BENNETT:  From the new 10 foot setback to the
20  property line about 10 foot and then to her house is
21  probably around 30.  From her beginning of her property
22  line.  So building to building would be approximately 40
23  feet.

24     PLAINTIFF JANE BENNETT:  Approximately 40 feet.

25     THE COURT:  Well, one of the concerns--let me back up.

E224

11

1   PLAINTIFF JANE BENNETT:  Uh-huh.
2   THE COURT:  Does that work best?
3   PLAINTIFF JANE BENNETT:  Yes.
4   THE COURT:  I'm going to schedule the hearing
5   September 6 of the year 2000, 1:15 in the afternoon.
6   Now, you need to get service of the paperwork before
7   then.  The idea is that you're going to show up for this
8   hearing, and you both have to be prepared to present
9   whatever evidence that you might have regarding whether or
10  not this Restraining Order should be made permanent, whether
11  the case should be dismissed, whether some different form of
12  Restraining Order should issue, and that hearing is going to
13  take place in front of Judge Garrecht in the County Court
14  across the hall.
15  If you don't show up, the case will be dismissed and
16  the Restraining Order will be dissolved.  If you do show up
17  and she doesn't show up, Judge Garrecht will probably make
18  the Restraining Order permanent, and if you show up and she
19  shows up, you need to be prepared to present whatever
20  evidence you have to support the issuance of a permanent
21  Restraining Order.  That means if you have other witnesses,
22  you need to get those folks down to court and have them
23  prepared to testify at 1:15 next Wednesday afternoon.
24  Do you understand all that?
25  PLAINTIFF JANE BENNETT:  Yes.  Is it relative only to

I E227

Case 2:05-cv-02510-JWL-KGS   Document 18-8   Filed 02/21/06   Page 11 of 11
Case 1:24-cv-00246-JL-AJ   Document 1-2   Filed 08/12/24   Page 11 of 11

12

1  this incident, or is it relative to past incidents?
2    THE COURT:  No.  Any evidence that you would have that
3  would support the issuance of a Restraining Order on the
4  basis that she has threatened your physical safety would be
5  the subject, both the incident on August 29, as well as any
6  prior incidents.
7    I'm trying to finalize this Restraining Order form, and
8  I'm going to note on here the basis that I've found for
9  issuing the Restraining Order.
10   All right.  Mrs. Bennett, if you want to go around to
11  the Court Clerk's Office, the Clerk will give you a copy of
12  this Restraining Order and give you the copy of the
13  Complaint, Affidavit of Service, and the other documents
14  that you need to have served on Ms. Sieverding, and then if
15  you have any questions about how to get those documents
16  served, the Clerk can assist you with that as well.
17   Do you have any questions about anything?
18    PLAINTIFF JANE BENNETT:  I don't.
19    THE COURT:  All right.  If you will go around to the
20  Clerk's Office.
21    PLAINTIFF JANE BENNETT:  Thank you.
22    THE COURT:  I will give the file to the Clerk and so
23  they can get that for you.
24    PLAINTIFF JANE BENNETT:  Thank you.
25    (Whereupon, the Court recessed at 11:59 a.m.)

E 228